UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

STEVEN FRANCIS D'AMICO,

    Plaintiff,

v.                                                          Case No. 4:18cv494-RH-HTC

JULIE JONES, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants Dr. Bassa and Wheeler's Motion to Dismiss Plaintiff's Sixth Amended Complaint (ECF Doc. 62) and Plaintiff's response thereto (ECF Doc. 72). The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). As discussed below, while the undersigned finds this case should be dismissed for Plaintiff's failure to disclose his complete litigation history, should the District Judge find such a dismissal inequitable given the length of time this case has been pending, the undersigned also considered the merits of the motion and finds it should be DENIED.

    **I.**    **FAILURE TO DISCLOSE**

Although this action was initially filed in October 2018, it was not assigned to the undersigned until June 2020, after the sixth amended complaint had been

screened and all claims had been dismissed other than Plaintiff's Eighth Amendment claims as to Dr. Bassa and Steven Wheeler, the CEO of Centurion. Upon reviewing the sixth amended complaint for purposes of addressing the pending motion to dismiss, the undersigned discovered Plaintiff failed to disclose three (3) federal habeas actions that he filed between the time of filing his initial complaint (ECF Doc. 1) and his sixth amended complaint (ECF Doc. 34).

Each of Plaintiff's amended complaints specifically asked, "Have you initiated other actions . . . in either state or federal court that relate to the fact or manner of your incarceration (*including habeas corpus petitions*) or the conditions of your confinement?" ECF Docs. 6, 16, 22, 25, 31, 34 (emphasis added). Each complaint also warned "[f]ailure to disclose *all* prior cases may result in dismissal of this case." ECF Doc. 34 at 15.

Despite this warning and despite Plaintiff filing each amended complaint under penalty of perjury, Plaintiff failed to disclose the following three federal habeas actions: 1:19cv24139, 0:19cv62840, and 1:19cv61851 in any of his amended complaints.[1] Although these cases were filed after Plaintiff's initial complaint but prior to his sixth amended complaint, Plaintiff nonetheless knew he had an

---

[1] Plaintiff also failed to consistently disclose his litigation history. Namely, Plaintiff did not disclose two 2013 cases in his sixth amended complaint that he previously disclosed in his prior amendments. Since "an amended complaint supersedes and replaces the original complaint," the undersigned finds that any prior cases not disclosed in Plaintiff's sixth amended complaint would be an additional ground for dismissal. *Phoenix Entm't Partners, LLC v. Jellyfish, LLC*, No. 3:17CV929/MCR/GRJ, 2018 WL 10517181, at *1 (N.D. Fla. Apr. 12, 2018).

obligation to disclose these lawsuits, as he disclosed three (3) other lawsuits that were subsequently filed after his initial complaint.[2] The Eleventh Circuit has affirmed a dismissal for abuse of the judicial process based on a plaintiff's failure to disclose cases filed between amended pleadings. *See Redmon v. Lake County Sheriff's Office,* 414 F. App'x 221, 224 (11th Cir. 2011).

"A plaintiff's affirmative misrepresentation regarding his prior litigation history, when the complaint form required disclosure of such history and the plaintiff's statements were made under penalty of perjury, constitutes abuse of the judicial process warranting dismissal of the case without prejudice as 'malicious' under § 1915(e)(2)(B)(i) and § 1915A(b)(1)." *Ealy v. CCA,* 2015 WL 9647546, at *1 (N.D. Fla. Dec. 18, 2015) (collecting Eleventh Circuit cases affirming dismissals without prejudice where plaintiffs failed to disclose their prior litigation history).

Indeed, this Court previously held that "dismissal without prejudice is not too severe a sanction" when a plaintiff is dishonest about his prior lawsuits. *Rodriguez v. Inch*, Case No. 4:19cv191-RH-HTC, at ECF Doc. 52. In *Rodriguez*, the District Court dismissed Plaintiff's action, over a year after it was filed, because Plaintiff failed to disclose seven prior federal lawsuits despite the clear questions on the complaint form. *Id.* In doing so, the Court reasoned that "[i]f the requirement for

---

[2] Plaintiff's initial complaint was filed in October 2018 and his Sixth Amended complaint was filed in March 2020. Plaintiff subsequently disclosed cases 4:19cv444, 4:19cv446 and 3:19cv1422.

prisoner plaintiffs to disclose their prior lawsuit is to serve its purpose, a plaintiff must provide accurate information.  If word got around the prisons that inaccurate or incomplete or information could be provided with no effective sanction, the form would serve little purpose." *Id.*

Consistent therewith, the undersigned also finds dismissal to be an appropriate sanction here.  However, the undersigned also acknowledges in *Luckey v. May*, No. 5:14-CV-315-MW-GRJ, 2017 WL 431342, at *3 (N.D. Fla. Jan. 4, 2017), *report and recommendation adopted sub nom. Lucky v. May*, No. 5:14CV315-MW/GRJ, 2017 WL 421669 (N.D. Fla. Jan. 31, 2017), which Magistrate Judge Jones described as a "close call," this Court chose not to grant dismissal based on a failure to disclose a state habeas case.  Judge Jones explained the case had been pending since 2014, had gone through two rounds of motions to dismiss, and neither the Court nor the Defendant raised this issue until the third amended complaint was filed.  Thus, it was not "bad faith" for the plaintiff to include the same information in his third amended complaint that he did in his first.

Of course, the facts here are different.  D'Amico's failure to disclose involves three (3) federal cases, rather than one (1) state case.  Also, this is the first motion to dismiss filed by Defendants.  Finally, and more importantly, Plaintiff did not simply make the same disclosures he had in prior versions of his complaint but did disclose,

some, of the cases he had filed in the interim. Finally, the requirement of full disclosure is not necessarily contingent on a finding of bad faith or ill-will.

Nonetheless, out of an abundance of caution and in the event the District Judge finds dismissal for failure to disclose inappropriate here, the undersigned will also address, in the alternative, why the motion should be DENIED on the merits.

## II. DEFENDANTS' MOTION TO DISMISS

Plaintiff Steven D'Amico, an inmate of the Florida Department of Corrections ("FDOC"), initiated this action in 2018 alleging Defendants violated his First and Eighth Amendment rights, as well as committed violations of the Americans with Disabilities Act ("ADA"), for failing to treat his skin lesions. As stated above, this Court previously dismissed all claims except Plaintiff's deliberate indifference claim against Dr. Bassa and Wheeler for "failure to treat or otherwise provide care for a lesion needing a biopsy or for a known cancer for more than a year…." *Id.* at 2. The Court further stated that although D'Amico "has not named Centurion as a defendant, [] he has named Centurion's chief executive officer in his official capacity – the equivalent of naming Centurion." ECF Doc. 38 at 3.

### A. Background

In 2007, D'Amico was diagnosed with chronic lymphocytic leukemia (CLL), which he alleges makes him more susceptible to skin cancer. ECF Doc. 34 at 6. As a result, the FDOC treated "D'Amico for skin cancers every six months from 2007

through 2013." *Id.* at 7. According to D'Amico, this treatment was "suddenly denied" after the FDOC "privatized [its] medical services in 2013" and again in 2016. *Id.*

In 2016, the FDOC contracted with Centurion to provide medical treatment for inmates. *Id.* at 8. Plaintiff alleges that Centurion, through its CEO Defendant Wheeler, had a policy which "intended to deny and delay needed care to D'Amico . . . to save money" and that Defendant Wheeler "enforced his policy through RMC medical director[] . . . Bassa." *Id.* at 8-9.

Specifically, D'Amico alleges Dr. Bassa ignored and denied his grievances, which sought dermatological care, for nearly two years. *Id.* at 9. However, in October 2018, the same month in which D'Amico filed his initial complaint, Dr. Bassa "instructed [the] out patient clinic (OPC) [doctor] to examine [D'Amico's] lesions." *Id.* The OPC doctor concluded that D'Amico's lesions were "just freckles." *Id.* D'Amico contested the doctor's findings, and Dr. Bassa ordered a different doctor to re-examine D'Amico's lesions. *Id.*

Subsequently, Plaintiff amended his complaint to add events occurring after the time his complaint was filed. D'Amico alleges that on November 1, 2018, the OPC doctor determined a lesion on his back needed a biopsy. *Id.* at 9-10. Additionally, on November 20, 2018, D'Amico alleges a different doctor diagnosed

a cancerous lesion on his forehead. *Id.* at 10.[3] Despite these diagnoses, D'Amico alleges he "has not [received] any care for this condition," and the Defendants "unexplained withdrawal of care has allowed . . . cancerous lesions to continue to develop for another year." *Id.*

### B. Legal Standard

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the question is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

Also, in considering a motion to dismiss for failure to state a claim, the Court must read Plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), and accept "[a]ll well-pleaded facts in plaintiff's complaint and all reasonable inferences drawn from those facts … as true." *McGinley v. Houston*, 361 F.3d 1328, 1330 (11th Cir. 2004) (citation omitted).

---

[3] Because Plaintiff filed his initial complaint in October 2018 but complains about events that occurred in November 2018, the Court is mindful of footnote 1 in Defendants' Motion to Dismiss. ECF Doc. 62 at 1. Specifically, "Defendants strongly believe that Plaintiff has not properly exhausted his grievance related to this action." *Id.* Because Defendants contend that they do not have all of Plaintiff's grievances, they are not waiving exhaustion as a basis for dismissal, "but if it is later found to be applicable . . . will assert in in an appropriate motion." *Id.*

## C. <u>Discussion of Claims</u>

Defendants Dr. Bassa and Wheeler seek dismissal on three (3) grounds: (1) Plaintiff has failed to state a claim on which relief can be granted; (2) Defendants are entitled to qualified immunity; and (3) the Eleventh Amendment bars Plaintiff's claims against Defendants in their official capacities for monetary damages.[4] ECF Doc. 62. Because the undersigned finds Plaintiff has stated a claim for relief under the Eighth Amendment as to both Defendants, the undersigned does not address the qualified immunity argument. The undersigned also finds, as discussed below, that the question of whether the Eleventh Amendment bars claims against the Defendants in their official capacity cannot be determined at the motion to dismiss stage.

In response to Defendants' motion on his Eighth Amendment claim, D'Amico argues that "Defendant Wheeler was the driving force behind Centurion's department wide policy to deny and delay medical care . . . to save money," and Dr. Bassa was directly involved in denying a "minimum standard of care." ECF Doc. 72 at 1. Although the undersigned is skeptical whether D'Amico will ultimately prevail on his Eighth Amendment claim, in looking at the four corners of his sixth

---

[4] Defendants also argue D'Amico has failed to state a First Amendment claim, an ADA claim, and a claim based on the Universal Declaration of Human Rights. However, as set forth above, this Court has already dismissed "[a]ll claims arising from acts or omissions other than the failure to treat" after November 2018. ECF Doc. 38 at 3. Thus, the undersigned does not address these claims.

amended complaint,[5] D'Amico has alleged sufficient facts to overcome a motion to dismiss.

1. *Eighth Amendment Deliberate Indifference as to Dr. Bassa*

To prevail on an Eighth Amendment deprivation of medical care claim, a prisoner must prove three (3) elements: (1) a serious a medical need; (2) the defendant's deliberate indifference to that need; and (3) causation. *Mann v. Taser Int'l, Inc.,* 588 F.3d 1291, 1306-07 (11th Cir. 2009). To establish the first element, a plaintiff must demonstrate "an objectively serious medical need" so grave that, "if left unattended, [it] poses a substantial risk of serious harm." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotation marks, alterations, and citations omitted). In a previous case filed by D'Amico, this District concluded that "Leukemia is a serious medical need [and] having a lesion which is suspected by an Oncologist to be skin cancer is [also] a serious medical need. Any lay person would readily recognize the need for [] medical attention and a clarifying diagnosis for such a condition." *D'Amico v. Montoya*, No. 4:15CV127-MW/CAS, 2016 WL 11248929, at *3 (N.D. Fla. Feb. 25, 2016), *report and recommendation adopted in part, rejected*

---

[5] Attached to Defendants' response in opposition to D'Amico's motion for preliminary injunction (ECF Docs. 70; 70-1) are numerous medical records indicating D'Amico was seen at least three times after his November 2018 diagnoses. However, D'Amico refused treatment because the attending physicians were either nurse practitioners or general M.D. doctors and not licensed dermatologists.

Case No. 4:18cv494-RH-HTC

*in part*, No. 4:15CV127-MW/CAS, 2016 WL 8711513 (N.D. Fla. Apr. 1, 2016). Thus, there is no dispute as to the first element.

The second element requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor*, 221 F.3d at 1258. In other words, D'Amico must sufficiently allege "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (citing *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)). Because deliberate indifference requires the showing of a Defendant's mental state, plaintiffs usually must rely on circumstantial evidence and inferences to allege and establish this element. *See Huddleston v. United States*, 485 U.S. 681, 685 (1988) (noting that frequently "the only means of ascertaining . . . mental state is by drawing inferences from conduct").

D'Amico alleges he was diagnosed with Chronic Lymphocytic Leukemia (CLL) in 2007, which made him more susceptible to skin cancers. As a result, D'Amico alleges he received treatment every six months and had multiple cancerous and pre-cancerous lesions removed from his body from 2007 to 2013. D'Amico further alleges Dr. Bassa was notified of his serious condition through his grievances and that Dr. Bassa personally denied D'Amico's grievances for dermatological care.

These allegations are sufficient to show that Dr. Bassa was subjectively aware of a risk of serious harm to D'Amico if he did not receive continued skin treatment.

D'Amico further alleges Dr. Bassa ordered the OPC to examine and re-examine D'Amico's skin lesions, which resulted in two diagnoses. D'Amico alleges on November 1, 2018, a doctor in the OPC concluded a lesion on his back need a biopsy and on November 20, 2018, a different doctor diagnosed a cancerous lesion on his forehead. Despite these diagnoses, D'Amico alleges Dr. Bassa did not refer or order the OPC to treat his condition for over a year because Centurion had a policy to deny and delay needed medical care in effort to save money. D'Amico's response also contends Defendant Wheeler, the CEO of Centurion, incentivized Dr. Bassa to deny such care by paying him a bonus.

These allegations are sufficient to show Dr. Bassa knew of the seriousness of the risk, disregarded that risk, and was in a position to ensure appropriate care but intentionally denied such treatment based on Centurion's policy. Moreover, in the Court's May 31, 2020 order, the Court determined Dr. Bassa could be "individually liable if he implemented a policy of not treating skin cancers," as D'Amico alleges. ECF Doc. 38 at 3. Defendants have made no arguments in this motion to dismiss that alters that conclusion. *See Derks v. Corizon LLC*, No. 5:15-CV-51-MW-GRJ, 2016 WL 4942040, at *4 (N.D. Fla. Aug. 15, 2016), *report and recommendation adopted*, No. 5:15CV51-MW/GRJ, 2016 WL 4942016 (N.D. Fla. Sept. 15, 2016)

(finding "[a] medically unjustified delay or a decision to use less effective treatment to save money could be deliberate indifference within the meaning of the Eighth" Amendment); *Melton v. Abston*, 841 F.3d 1207, 1223 (11th Cir. 2016) (emphasis added) ("A defendant who unreasonably fails to respond or refuses to treat an inmate's need for medical care or one who delays treatment without explanation or for *non-medical* reasons may also exhibit deliberate indifference.").

  2. <u>*Eighth Amendment Supervisory Claim Against Wheeler*[6]</u>

To state a claim against Wheeler, in his official capacity, D'Amico must allege (1) his constitutional rights were violated; (2) Centurion has a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the custom or policy caused the violation. *See Denham v. Corizon Health, Inc.*, 675 F. App'x 935, 940-41 (11th Cir. 2017). As discussed above, the undersigned finds D'Amico has alleged sufficient facts to show his Eighth Amendment rights were violated.

As to the remaining elements, Defendants argue (1) D'Amico's allegations are based on an imaginary policy, and (2) D'Amico has not alleged facts showing that any policy employed by Centurion was "persistent and wide-spread." The undersigned finds little merit in either argument.

---

[6] Defendants also argue the claims against Wheeler in his individual capacity should be dismissed because Plaintiff has failed to allege Wheeler was personally involved in Plaintiff's treatment or was aware of his medical condition. The undersigned, however, need not address this argument because, as stated above, the only claim the Court allowed past screening as to Wheeler is a claim against him, in his official capacity, as the CEO of Centurion. ECF Doc. 38 at 3.

First, the Court cannot decide at the motion to dismiss stage whether a policy exists. Instead, the Court must look at the Plaintiff's allegations and determine whether he has set forth facts from which the Court can infer the existence of a policy. D'Amico has done that here. D'Amico consistently alleges throughout his complaint, and his response in opposition, that Defendant Wheeler, on behalf of Centurion, "instituted his wide-spread long standing practice, which systematically denied sufficient care to D'Amico" in effort to save money. ECF Doc. 34 at 9.

Second, D'Amico has alleged facts showing the policy was implemented by Centurion employees. D'Amico alleges, for example, "OPC doctors at RMC were trained and indoctrinated into Defendant Wheeler's department wide policy by . . . Defendant Bassa [and] that Defendant Bassa . . . instruct[ed] his staff to lie by claiming a dermatologist was not available." ECF Doc. 72 at 2. D'Amico also alleges Defendant Wheeler paid Dr. Bassa "a bonus for such deprivations," (ECF Doc. 72 at 1) and the "unexplained withdrawal of care has allowed for known and unknown cancerous lesion to continue to develop for another year and three months." ECF Doc. at 10.

Accepting these allegations as true, the undersigned finds D'Amico's allegations "are sufficient to state a deliberate-indifference claim against Centurion based on its alleged policy of denying or delaying necessary medical care in order to cut costs." *Mann v. Calderon*, No. 1:17-CV-241-AW-GRJ, 2020 WL 7364654,

at *6 (N.D. Fla. Oct. 9, 2020), *report and recommendation adopted*, No. 1:17-CV-241-AW-GRJ, 2020 WL 7360692 (N.D. Fla. Dec. 15, 2020).

    3.  *Eleventh Amendment Immunity*

Under the Eleventh Amendment, states and state agencies cannot be sued in federal court unless (1) the state consents to be sued or (2) Congress abrogates the state's Eleventh Amendment immunity. *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). This immunity extends to individuals or entities who act as an "arm of the State." *Lake v. Skelton*, 840 F.3d 1334, 1337 (11th Cir. 2016) (citations omitted). Although not a state agency, Centurion argues it acts under state law and stands in the shoes of the FDOC. ECF Doc. 62 at 16. Thus, according to Defendants, Wheeler is entitled to Eleventh Amendment immunity in his official capacity because Florida has not waived its Eleventh Amendment immunity, and there has been no congressional waiver of the states' Eleventh Amendment immunity.

Defendants, however, cite no cases in which a court has afforded Centurion or its employees protection from monetary liability under the Eleventh Amendment. To the contrary, this Court has previously recognized that Centurion may *not* be entitled to such immunity. *See Rodriguez v. Asencio*, 2019 WL 3916268, at *10 n. 8 (N.D. Fla. Jul. 29, 2019) ("[I]t is not apparent the Medical Defendants would be entitled to immunity under the Eleventh Amendment, as they are

employees of a private corporation." (citing *Boatfield v. Parker*, 2019 WL 1332369, at \*8 (E.D. Tenn. Mar. 25, 2019) ("Defendant Centurion, part of a corporate joint venture with 50 billion dollars of annual revenue that provides medical care for inmates in TDOC's custody … does not enjoy Eleventh Amendment immunity"))).[7]

Moreover, whether Centurion may ultimately benefit from Eleventh Amendment immunity cannot be determined on a motion to dismiss because it requires a factual analysis. One of the primary goals of Eleventh Amendment immunity is to protect a state's treasury. *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 48-49 (1994) (collecting cases in support of such). To determine whether an official or entity acts as an arm of the state, a court must first determine "the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Lake*, 840 F.3d at 1337 (quoting *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003)). Then, the court must "determine whether the defendant is an 'arm of the State' in his performance of the function by considering four (4) factors: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds;

---

[7] *See also Davis v. Buchanan County Missouri*, 2020 WL 2616737, at \*8 (W.D. Mo. May 22, 2020) ("[A] private entity like Corizon do[es] not have an 'official capacity' as that term is used under [the] Eleventh Amendment … Eleventh Amendment immunity is available only to states and state agencies and officials sued in their official capacity.") (internal quotations and citations omitted).

and (4) who is responsible for judgments against the entity." *Id.* (quoting *Manders*, 338 F.3d at 1309).  In applying these four (4) factors, a court must evaluate both the "governmental structure of [the] office vis-à-vis the State" and the "functions in issue." *Id.*

Consideration of these factors requires the Court to go outside the four corners of the complaint, which it cannot do at the motion to dismiss stage. *See Austin v. Modern Woodman of America*, 275 F. App'x 925, 926 (11th Cir. 2008) ("A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss."); *see generally Ancata v. Prison Health Services*, 769 F.2d 700, 706 (11th Cir. 1985) ("The issue of which entity is fiscally responsible, i.e., the sheriff's office or the county should be resolved before either one is properly dismissed.  Until that issue is resolved, [the sheriff] should remain a party to this litigation.").

### III.   CONCLUSION

Accordingly, it is RESPECTFULLY RECOMMENDED that:

1. Plaintiff's sixth amended complaint (ECF Doc. 34) be DISMISSED WITHOUT PREJUDICE as malicious for abuse of the judicial process.

2. **<u>In the alternative</u>**, Defendants' Motion to Dismiss (ECF Doc. 62) be DENIED.

3. Defendants be directed to file an answer to the sixth amended complaint, pursuant to Federal Rule of Civil Procedure 12, fourteen (14) days after the Court's order denying the motion to dismiss.

4. This case be referred to the undersigned chambers for further action.

DONE AND ORDERED this 11th day of February 2021.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**